Andrew Roman Perrong, OSB No. 243320
a@perronglaw.com
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, PA 19038
215-225-5529
Attorney for Plaintiff and the Proposed Class

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
PORTLAND DIVISION**

| | |
|---|---|
| LEON WEINGRAD, individually and on behalf of a class of all persons and entities similarly situated, <br><br> Plaintiff <br><br> vs. <br><br> CHW Group, Inc. <br> d/b/a Choice Home Warranty <br><br> Defendant. | Case No. 25-370 <br><br><br> CLASS ACTION COMPLAINT <br> TCPA (47 U.S.C. § 227) <br> DEMAND FOR JURY TRIAL |

<u>**CLASS ACTION COMPLAINT**</u>

<u>**Preliminary Statement**</u>

1.     As the Supreme Court has explained, "Americans passionately disagree about

many things. But they are largely united in their disdain for robocalls. The Federal Government

receives a staggering number of complaints about robocalls—3.7 million complaints in 2019

alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the

people's representatives in Congress have been fighting back. As relevant here, the Telephone

Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell

phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2343 (2020).

2.      However, the TCPA doesn't only restrict robocalls.

3.      "Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms' *id.* § 2(9).

4.      "The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.')…Private suits can seek either monetary or injunctive relief. *Id…*This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against

invasions of privacy that were harming people.  The law empowers each person to protect his

own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA

affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon

their domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

5.      Plaintiff Leon Weingrad ("Plaintiff") brings this action under the TCPA alleging

that CHW Group, Inc., which does business as Choice Home Warranty, sent pre-recorded

telemarketing calls promoting their home warranty goods and services, including to numbers that

were on the National Do Not Call Registry, such as the Plaintiff. Those calls were made without

the call recipient's prior express written consent.

6.      Because the calls were transmitted using technology capable of generating

thousands of similar calls per day, Plaintiff brings this action on behalf of a proposed nationwide

class of other persons who were sent the same illegal telemarketing calls.

7.      A class action is the best means of obtaining redress for the Defendant's illegal

telemarketing and is consistent both with the private right of action afforded by the TCPA and

the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## Parties

8.      Plaintiff Leon Weingrad has a 503- telephone number associated with this

District, in Clackamas County.

9.      Defendant CHW Group, Inc. is a New Jersey corporation with its headquarters

and principal place of business in New Jersey that sells service contracts for various home goods

and appliances, commonly referred to as "home warranties."

**Jurisdiction & Venue**

10.     The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because the Plaintiff's claims arise under federal law.

11.     The Court has specific personal jurisdiction over Defendant because Defendant directed their conduct into Oregon by calling individuals with Oregon telephone numbers, including those, like Plaintiff, possessing 503- area code numbers, which are associated with this District.

12.     Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District, as the automated calls to the Plaintiff were sent into this District.

**The Telephone Consumer Protection Act**

13.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.  In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

The National Do Not Call Registry

14.     The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

15.     A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

16.     The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted.  47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

<u>The TCPA Prohibits Prerecorded Calls to Cell Phones</u>

17.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.  In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy[.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

18.     The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call." 47 U.S.C. § 227(b)(1)(A).

19.     The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). *See* 47 U.S.C. § 227(b)(3).

20.     According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

21.    Congress singled out these services for special protection either because Congress realized their special importance in terms of consumer privacy and therefore protected them (as in the case of cellular phones), or because the numbers are assigned to services for which the called party is charged, thus shifting the cost of automated or prerecorded messages onto consumers. *See Barr v. Am. Ass'n of Pol. Consultants, Inc*, 140 S. Ct. 2335, 2363, (2020) (Gorsuch, J. & Thomas, J., concurring in part and dissenting in part).

22.    This cause of action applies to users of any one of the four protected services (pager, cellular, specialized mobile radio [i.e. radiotelephony locator beacons or dispatch systems], or another radio common carrier service [i.e. ship-to-shore or air-to-ground]), or any service, including residential, VoIP, and landline services, for which the called party is charged for the call. *See Perrong v. Victory Phones LLC*, No. CV 20-5317, 2021 WL 3007258, at *6 (E.D. Pa. July 15, 2021).

23.    "Non-emergency prerecorded voice or autodialed calls to [the destinations enumerated in 47 U.S.C. § 227(b)(1)(A)] are permissible only with the prior express consent of the called party." This includes calls made using artificial or prerecorded voices pitching services. *See* FCC Enforcement Advisory: Tel. Consumer Prot. Act Robocall & Text Rules - Biennial Reminder for Pol. Campaigns About Robocall & Text Abuse, 31 FCC Rcd. 1940, 1941 n.6 (2016) [hereinafter FCC Advisory].

24.    Non-consensual, non-emergency calls placed using an ATDS or an artificial or prerecorded voice violate 47 U.S.C. § 227(b)(1)(A), regardless of the purpose of the call. *Victory Phones*, 2021 WL 3007258, at *6 (rejecting claim that noncommercial survey calls were exempt and holding that "[T]he operative language of the TCPA is unambiguous. Section 227(b)(1)(A)

prohibits placing artificial and prerecorded voice calls to a variety of telephone numbers."). To hold otherwise would read the words "any person" and "any call" out of the statute. *See id.*

## Factual Allegations

25.    Plaintiff Weingrad is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

26.    Plaintiff's telephone number, (503) XXX-XXX, is a non-commercial telephone number not associated with any business.

27.    Plaintiff's telephone number has been listed on the National Do Not Call Registry for over a year prior to the calls at issue.

28.    Mr. Weingrad uses the number for personal, residential, and household reasons.

29.    Mr. Weingrad does not use the number for business reasons or business use.

30.    The number is a residential telephone line because it is not assigned to a telephone exchange service for businesses.

31.    The number is assigned to a residential cellular telephone service.

32.    Plaintiff Weingrad never consented to receive calls from Defendant CHW.

33.    Plaintiff Weingrad never did business with either Defendant CHW.

34.    Despite this fact, Defendant CHW used illegal robocalls to call the Plaintiff.

35.    As a result of such robocalls, Defendant CHW used such robocalls to market and continue to market their services to the Plaintiff, including by forcing the Plaintiff to purchase a home warranty, which he has been unsuccessful in cancelling, as a result of the illegal calls.

36.    The Plaintiff received three illegal calls from the Defendant.

37.    The first such call was sent by CHW using a pre-recorded voice and in an attempt to sell Choice Home Warranty services, by name, from the phone number 917-810-9326, on

February 3, 2025. As soon as Plaintiff answered the call, an artificial, computer-generated voice
played:

> Hey there! I'm from Choice Home Warranty calling with an offer for a
> home warranty. Let's face it, appliances break way more often than we'd
> like. So, why not cover yourself when appliances and systems like your
> refrigerator break down? We can help find the home warranty plan that
> protects your home and your wallet. We've covered more than 2 million
> homes across the USA and we're even offering the first month free of
> charge. If you're not interested in this offer, press 3. To speak with
> one of our helpful agents, press 1.

38.     Plaintiff pressed "1" to ascertain the identity of the caller who was calling him
illegally and for no other reason, including verifying that it was actually Choice Home Warranty
calling with a highly-illegal pre-recorded message. When the Plaintiff pressed "1," he heard a
professionally-recorded voice actor say:

> Thank you for calling Choice Home Warranty. Your call may be monitored
> or recorded for quality and training purposes.

39.     For the avoidance of doubt, despite the voice actor stating "Thank you for calling
Choice Home Warranty," the call was a call that was placed to the Plaintiff by Defendant.

40.     Prior to the call, the Plaintiff never had any dealings with, interacted with,
requested calls from, or wanted, calls from Defendant, and the Plaintiff has no need, want, or
desire for a home service contract.

41.     This call was placed using and beginning with a prerecorded voice because: (a)
the voice was an obviously computer-generated voice, (b) it would be illogical for a human to
ask that a person receiving the call press touch tones, (c) the robot had the same identical,
generic, monotone computer-generated voice on the calls, (d) it would be illogical for a human to
call someone and play various scripted messages and statements without the ability to engage in

Complaint                                        8

dialogue, (e) it would be illogical and (e), the Plaintiff was eventually transferred to a human being who was obviously human.

42.    After some hold music, a human being, who did not identify himself, came on the line and stated, "Choice Home Warranty, how can I help you?" The Plaintiff inquired as to why he was receiving an illegal call, and the agent replied, "Yeah, this is Choice Home Warranty. Do you have any questions about getting the warranty plan for your home? Possibly getting you a better price?"

43.    This individual then discussed the various details of the coverage plan and pricing, including what it covered, and pitched a Choice Home Warranty home service contract for $561 a year with one month free.

44.    The Plaintiff stated that he would call the Defendant back if he was interested.

45.    When counsel for Plaintiff called this 917-810-9326 number prior to the filing of the Complaint, a prerecorded message, in the same computer-generated voice as the February 3 call, is played:

> Sorry, but you've caught Choice Home Warranty off hours. Please text us at this number to schedule a call. Otherwise, we will reach out on our next business day. We look forward to speaking with you soon.

46.    Despite this clear indication that he was not interested, the Plaintiff received another call from the Defendant on February 4, 2025 from the telephone number 614-826-9489.

47.    This call, unlike the previous, was a live person call. The agent identified herself as "Lisa" who was "calling from Choice Home Warranty on a recorded line" to "briefly inform you about our promotion that we're running for home warranty coverage."

48.    "Lisa" then stated that she would bring a "sales specialist" on the line to give the Plaintiff further details.

49.     Perplexingly, "Lisa" began the call by asking to speak with a "Mr. Olson" and introduced the Plaintiff to the sales agent to whom Plaintiff was transferred, "Johnathan," as "Mr. Olson." Plaintiff corrected this mistake and attempted to ascertain why he was receiving illegal calls, but "Johnathan" simply went into the script stating that, "We're with Choice Home Warranty. I'll quickly go over what's covered. I'll explain how the whole thing works and I'll also get you a much better price than what's online."

50.     "Jonathan" then went through a substantially similar script as the previous agent the other day, including describing the coverages and providing the same pricing with the same one month free.

51.     "Johnathan" admitted that the Plaintiff would only stop receiving calls if he made a purchase and that "After this, you won't receive any more calls, texts, or emails," and attempted to in fact *upsell* the Plaintiff on a five-year warranty plan to prevent the Plaintiff from receiving calls from the Defendant and it honoring its do not call requests for five years.

52.     The Plaintiff provided his credit card number and agreed to purchase a one-year plan to get the calls to stop and to verify that the caller was indeed Choice Home Warranty calling him illegally and not some impostor, and as a result, received a credit card charge from the Defendant on his credit card:



53.     However, "Jonathan" stated that the Plaintiff would receive all the pertinent information, including the terms and conditions and other information, including about a 30 day money-back guarantee, via email, but the Plaintiff did not receive anything, despite getting the aforementioned credit card charge on his credit card.

54.     To be clear, the Plaintiff did not and does not want the home service contract he purchased as a result of the third call to identify the caller and for no other reason, and wants it cancelled, including in accordance with Defendant's "money back guarantee." The Plaintiff reserves the right to add additional state law claims, including under state consumer protection law, in the event he does not receive a refund.

55.     The Plaintiff received a final call on February 5, 2025 from the phone number 614-826-9489.

56.     This call was a live person call. The agent identified himself as "Shamim with Choice Home Warranty," and was calling to upsell, despite the Plaintiff not asking for a call back or wanting to do so.

57.     "Shamim" had the information the Plaintiff provided the previous Choice Home Warranty agent during the previous call.

58.     "Shamim" also attempted to sell the Defendant an alarm system with ADT for signing up with Choice Home Warranty.

59.     The Plaintiff hung up the call.

60.     The aforementioned calls to the Plaintiff were unwanted.

61.     The calls were nonconsensual encounters.

62.     The calls were made in an attempt to sell the Plaintiff a home service contract.

63.     The Plaintiff does not and did not want a home service contract.

64.     Plaintiff's privacy has been violated by the above-described telemarketing calls.

65.     Plaintiff never provided his consent or requested the calls.

66.     Plaintiff and the other call recipients were harmed by these calls. They were temporarily deprived of legitimate use of their phones because the phone line was tied up, they were charged for the calls and their privacy was improperly invaded.

67.     In some cases, Plaintiff and the other call recipients were taken for hundreds or potentially thousands of dollars. They were duped into buying such policies simply so the calls would stop, and refused any documentation about said policies or the process for obtaining a refund, thus rendering them worthless

68.     Moreover, these calls injured Plaintiff because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of Plaintiff and the class, including when Plaintiff and other class members were working, driving, and performing other critical tasks.

## Class Action Statement

69.     Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

70.     Plaintiff brings this action on behalf of himself and the following classes (the "Classes") pursuant to Federal Rule of Civil Procedure 23(b)(2) and/or (b)(3) and Oregon Local Rule 23-2.

71.     Plaintiff proposes the following Class definitions, subject to amendment as appropriate:

**Robocall Class:** Plaintiff and all persons within the United States: (1) to whose cellular telephone numbers (2) CHW, or any third party acting on their behalf, placed a call using artificial or pre-record messages (3) within the four years prior to the filing of the Complaint.

**National Do Not Call Registry Class:** All persons within the United States: (1) whose residential telephone numbers were on the National Do Not Call Registry for at least 31 days; (2) but who received more than one telephone solicitation call from Defendant or any third party acting on Defendant's behalf; (3) within a 12-month period; (4) within the four years prior to the filing of the Complaint.

72.    Plaintiff is a member of and will fairly and adequately represent and protect the interests of the Classes as he has no interests that conflict with any of the Class members.

73.    Excluded from the Classes are counsel, Defendant, and any entities in which Defendant has a controlling interest, the Defendant's agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

74.    Plaintiff and all members of the Classes have been harmed by the acts of Defendant, including, but not limited to, the invasion of their privacy, annoyance, waste of time, the use of their telephone power and network bandwidth, and the intrusion on their telephone that occupied it from receiving legitimate communications.

75.    This Class Action Complaint seeks injunctive relief and money damages.

76.    The Class as defined above, are identifiable through Defendant's dialer records, other phone records, and phone number databases.

77.    Plaintiff does not know the exact number of members in the Classes, but Plaintiff reasonably believes Class members number, at minimum, in the hundreds.

78.    The joinder of all Class members is impracticable due to the size and relatively modest value of each individual claim.

79.    Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

80.    There are well defined, nearly identical, questions of law and fact affecting all parties. The questions of law and fact, referred to above, involving the class claims predominate over questions that may affect individual Class members.

81.    There are numerous questions of law and fact common to Plaintiff and to the proposed Classes, including, but not limited to, the following:

a.    Whether Defendant made multiple calls to Plaintiff and members of the National Do Not Call Registry Class;

b.    Whether Defendant made calls using artificial or prerecorded voices to Plaintiff and members of the Robocall Class;

c.    Whether Defendant's conduct constitutes a violation of the TCPA; and

d.    Whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

82.    Further, Plaintiff will fairly and adequately represent and protect the interests of the Classes. Plaintiff has no interests which are antagonistic to any member of the Classes.

83.    Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions, and especially TCPA class actions. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the other members of the Classes, and have the financial resources to do so.

84.    Common questions of law and fact predominate over questions affecting only individual Class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of Class members, which will be ascertainable from records maintained by Defendant and/or any of their agents or vendors.

85.    The likelihood that individual members of the Classes will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

86.    Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

## FIRST CAUSE OF ACTION

### Statutory Violations of the Telephone Consumer Protection Act
### (47 U.S.C. § 227(b)) on behalf of the Robocall Class

87.    Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

88.    The Defendant violated the TCPA by sending or causing to be sent calls to the cellular telephones and other protected telephones of Plaintiff and members of the Robocall Class using a pre-recorded messages without their prior express written consent.

89.    As a result of Defendant's violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and Robocall Class members are entitled to an award of $500 in statutory damages for each and every violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

90.    The Plaintiff and Robocall Class members are entitled to an award of treble damages if the Defendant's actions are found to have been knowing or willful.

91.    Plaintiff and Robocall Class members are also entitled to and do seek injunctive relief prohibiting Defendant from using a pre-recorded voice in the future, except for emergency purposes.

## SECOND CAUSE OF ACTION

### Violation of the Telephone Consumer Protection Act
### (47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1200(c) on behalf of Plaintiff and the National Do Not Call Registry Class)

92.    Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

93.    The foregoing acts and omissions of Defendant and/or any of their affiliates, agents, and/or other persons or entities which discovery may reveal may have been acting on Defendant's behalf, constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227. by making telemarketing calls, except for emergency purposes, to Plaintiff and members of the National Do Not Call Registry Class despite their numbers being on the National Do Not Call Registry.

94.    Defendant's violations were negligent, willful, or knowing.

95.    As a result of Defendant's and/or any of their affiliates, agents, and/or other persons or entities which discovery may reveal may have been acting on Defendant's behalf, violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the National Do Not Call Registry Class are entitled to an award of up to $500 and in damages for each and every call made and up to $1,500 in damages if the calls are found to be willful.

96.    Plaintiff and the members of the National Do Not Call Registry Class are also entitled to and do seek injunctive relief prohibiting Defendant and/or other persons or entities which discovery may reveal may have been acting on Defendant's behalf from making telemarketing calls to telephone numbers registered on the National Do Not Call Registry, except for emergency purposes, in the future.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

A. Injunctive relief prohibiting Defendant from calling telephone numbers advertising their goods or services, except for emergency purposes, to any residential number on the National Do Not Call Registry in the future;

B. Injunctive relief prohibiting Defendant from using artificial or pre-recorded voices to contact cell phones and other protected lines, except for emergency purposes, in the future;

C. That the Court enter a judgment awarding Plaintiff and all Class members statutory damages of $500 for each violation of the TCPA and $1,500 for each knowing or willful violation; and

D. An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing Classes the Court deems appropriate, finding that Plaintiff is a proper representative of the Classes, and appointing the lawyers and law firms representing Plaintiff as counsel for the Classes;

E. Such other relief as the Court deems just and proper.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all triable issues.

Plaintiff,
By Counsel,

Dated: March 3, 2025

s/Andrew Roman Perrong
Andrew Roman Perrong, OSB No. 243320
a@perronglaw.com
Perrong Law LLC

Complaint                                    17

2657 Mount Carmel Avenue
Glenside, PA 19038
215-225-5529
Lead Attorney for Plaintiff and the Proposed Class


s/Anthony Paronich
Anthony Paronich, Mass. BBO No. 678437
(*Pro Hac Vice* Forthcoming)
anthony@paronichlaw.com
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
617-485-0018
Attorney for Plaintiff and the Proposed Class