Jeffrey G. Bradford, OSB No. 133080
E-mail:jeff.bradford@tonkon.com
TONKON TORP LLP
888 SW 5th Ave., Suite 1600
Portland, Oregon 97204
Telephone: (503) 802-5724

A. Paul Heeringa, *admitted pro hac vice*
Email: pheeringa@manatt.com
MANATT, PHELPS & PHILLIPS, LLP
151 N. Franklin Street, Suite 2600
Chicago, IL 60606
Telephone: (312) 529-6308

*Attorneys for Defendant*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON
## PORTLAND DIVISION

| | |
|---|---|
| LEON WEINGRAD, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>*v.*<br><br>CHW GROUP, INC.<br>d/b/a Choice Home Warranty,<br><br>Defendant. | Case No. 3:25-cv-00370-HZ<br><br>**DEFENDANT'S MOTION TO COMPEL ARBITRATION AND TO STAY CASE**<br><br><br>**ORAL ARGUMENT REQUESTED** |

DEFENDANT'S MOTION TO COMPEL ARBITRATION AND TO STAY CASE

# TABLE OF AUTHORITIES

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES (INTRODUCTION) ............................ 1

I.    RELEVANT FACTUAL BACKGROUND ..................................................... 4

II.   ARGUMENT ......................................................................................... 6

    A.    A Valid and Binding Agreement to Arbitrate Exists in this Case ......................... 6

    B.    Any Challenge to Contract Formation Possibly Raises a Material Issue of Fact, Requiring Arbitration-Related Discovery and/or Trial on That Issue ........ 12

    C.    Any Disputes Regarding Arbitrability Have Been Delegated to the Arbitrator ................................................................................................ 14

    D.    The Arbitration Agreement Is Enforceable Under the FAA, and Plaintiff's Underlying TCPA Claims are Within the Arbitration Agreement's Broad Scope ...................................................................................................... 15

    E.    Any Arbitration is Required to Proceed Solely on an Individual Basis .............. 20

    F.    The FAA Requires That This Action Be Stayed Pending Arbitration................. 20

    G.    The Court Should Stay All Case Deadlines While Considering this Motion ...... 21

III.  CONCLUSION ..................................................................................... 22

# TABLE OF AUTHORITIES

**Page**

## CASES

*Aetna Life Ins. Co. v. Alla Med. Servs., Inc.*,
    855 F.2d 1470 (9th Cir. 1988) ............................................................................. 3

*Allied-Bruce Terminix Cos. v. Dobson*,
    513 U.S. 265 (1995) ........................................................................................... 16

*Am. Express Co. v. Italian Colors Rest.*,
    133 S.Ct. 2304 (2013) ....................................................................................... 20

*Am. Fam. Mut. Ins. Co. v. Vein Centers for Excellence, Inc.*,
    912 F.3d 1076 (8th Cir. 2019) ........................................................................... 12

*Androutsakos v. M/V PSARA*,
    2003 WL 23538012 (D. Or. July 7, 2003) ......................................................... 10

*AT & T Techs., Inc. v. Commc'ns Workers of Am.*,
    475 U.S. 643 (1986) ....................................................................................... 6, 17

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2011) ............................................................................... 16, 17, 20

*Bank Leumi, U.S. v. Miramax Distribution Servs., LLC*,
    2018 WL 7568361 (C.D. Cal. Dec. 27, 2018) .................................................... 15

*Bischoff v. DirecTV, Inc.*,
    180 F. Supp. 2d 1097 (C.D. Cal. 2002) ............................................................... 9

*Brady v. LendingClub Bank, Nat'l Ass'n*,
    2023 WL 3689613 (S.D. Cal. May 26, 2023) ..................................................... 20

*Brennan v. Opus Bank*,
    796 F.3d 1125 (9th Cir. 2015) ........................................................................... 15

*Briede v. 24 Hour Fitness, USA, Inc.*,
    2010 WL 4236929 (D. Or. Oct. 21, 2010) ........................................................... 8

*Britton v. Co-op Banking Grp.*,
    4 F.3d 742 (9th Cir. 1993) ................................................................................. 19

*Campos v. Bluestem Brands, Inc.*,
    2016 WL 297429 (D. Or. Jan. 22, 2016) .............................................................. 8

*Caremark, LLC v. Chickasaw Nation*,
    43 F.4th 1021 (9th Cir. 2022) ............................................................................ 14

*Carnival Cruise Lines, Inc. v. Shute*,
    499 U.S. 585 (1991) ........................................................................................... 10

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
    207 F.3d 1126 (9th Cir. 2000) ...................................................................... 6, 7, 18

# TABLE OF AUTHORITIES
(continued)

**Page**

*Citizens Bank v. Alafabco, Inc.*,
539 U.S. 52 (2002)............................................................................................16

*Cleveland v. Trapalis*,
2003 WL 23538026 (D. Or. July 30, 2003)............................................................7

*Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal.*,
508 U.S. 602 (1993)..........................................................................................8

*Conrad v. Phone Dirs. Co.*,
583 F.3d 1376 (10th Cir. 2009) ...........................................................................3

*DCIPA, LLC v. Lucile Slater Packard Children's Hosp. at Stanford*,
868 F. Supp. 2d 1042 (D. Or. 2011) ...................................................................10

*Dean Witter Reynolds Inc. v. Byrd*,
470 U.S. 213 (1985)....................................................................................17, 18

*DirecTech Del., Inc. v. Allstat Satellite, Inc.*,
2010 WL 1838573 (D.N.J. May 6, 2010) ..............................................................7

*DIRECTV, Inc. v. Imburgia*,
136 S.Ct. 463 (2015) ......................................................................................20

*Edwards v. Verizon*,
2015 WL 13654015 (C.D. Cal. Jan. 26, 2015) ......................................................18

*Epic Sys. Corp. v. Lewis*,
138 S.Ct. 1612 (2018).....................................................................................17

*Falk v. Aetna Life Ins. Co.*,
2019 WL 4143882 (D.N.J. Aug. 31, 2019) ...........................................................7

*Ferrell v. AppFolio, Inc.*,
2024 WL 132223 (C.D. Cal. Jan. 8, 2024) ..........................................................21

*First Options of Chi., Inc. v. Kaplan*,
514 U.S. 938 (1995)..........................................................................................7

*Fteja v. Facebook, Inc.*,
841 F. Supp. 2d 829 (S.D.N.Y. 2012)..................................................................11

*Fuqua v. Kenan Advantage Grp., Inc.*,
2012 WL 2861613, (D. Or. Apr. 13, 2012), *report and rec. adopted*, 2012 WL 2861660
(D. Or. July 11, 2012).......................................................................................9

*Gonzalez v. Comenity Bank*,
2019 WL 5596800 (E.D. Cal. Oct. 30, 2019) .........................................................9

*Gonzalez v. Hoovestol, Inc.*,
2024 WL 1722333 (E.D. Cal. Apr. 19, 2024).........................................................9

*Green Tree Fin. Corp.-Ala. v. Randolph*,
531 U.S. 79 (2000)...............................................................................7, 17, 18

# TABLE OF AUTHORITIES
(continued)

**Page**

*Hansen v. LMB Mortg. Servs., Inc.*,
1 F.4th 667 (9th Cir. 2021) ................................................................9, 13

*Hartranft v. Encore Cap. Grp., Inc.*,
543 F. Supp. 3d 893 (S.D. Cal. 2021)..........................................................12, 19

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
139 S.Ct. 524 (2019)............................................................................14

*Homestyle Direct, LLC v. DHS*,
354 Or 253 (2013)...............................................................................7

*Howard v. Ferrellgas Partners, L.P.*,
92 F. Supp. 3d 1115 (D. Kan. 2015).............................................................12

*Huynh v. Allstate Northbrook Indem. Co.*,
*2024 WL 2883228 (E.D. Cal. May 24, 2024)* ........................................................21

*JS Barkats, PLLC v. BE, Inc.*,
2013 WL 444919 (S.D.N.Y. Feb. 6, 2013)........................................................3

*Ken Hood Const. Co. v. Pac. Coast Const., Inc.*,
201 Or. App. 568 (2005).........................................................................7

*Knapke v. PeopleConnect, Inc*,
38 F.4th 824 (9th Cir. 2022) ...................................................................13

*Knecht v. Lanphere Enterprises Inc.*,
2020 WL 4910561, (D. Or. July 30, 2020), *report and rec. adopted,* 2020 WL 4910289
(D. Or. Aug. 19, 2020).........................................................................20

*Knutson v. Sirius XM Radio Inc.*,
771 F. 3d 559 (9th Cir. 2014) ..................................................................8

*KPMG LLP v. Cocchi*,
565 U.S. 18 (2011)..............................................................................6

*Lamkin v. Morinda Props. Weight Parcel, LLC*,
440 F.App'x 604 (10th Cir. 2011) ...............................................................3

*Lamps Plus, Inc. v. Varela*,
139 S. Ct. 1407 (2019)..........................................................................20

*Lifescan, Inc. v. Premier Diabetic Servs., Inc.*,
363 F.3d 1010 (9th Cir. 2004) ..................................................................3

*Little v. Midland Credit Mgmt., Inc.*,
2020 WL 4745191 (S.D. Ohio Aug. 17, 2020).....................................................21

*Livingston v. Metro. Pediatrics, LLC*,
227 P.3d 796 (Or .Ct. App. 2010)...............................................................8

*Marchand v. Northrop Grumman Corp.*,
2017 WL 2633132 (N.D. Cal. June 19, 2017) ......................................................3

# TABLE OF AUTHORITIES
(continued)

**Page**

*Marley v. PricewaterhouseCoopers LLP*,
2022 WL 500579 (D.N.J. Feb. 18, 2022) ...............................................................12

*Marmet Health Care Ctr., Inc. v. Brown*,
565 U.S. 530 (2012)...................................................................................................17

*Momot v. Mastro*,
652 F.3d 982 (9th Cir. 2011) .....................................................................................15

*Montoya v. Comcast Corp.*,
2016 WL 5340651 (E.D. Cal. Sept. 13, 2016)..........................................................12

*Mortensen v. Bresnan Communs., LLC*,
722 F.3d 1151 (9th Cir. 2013) .....................................................................................7

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983)..........................................................................................17, 18, 20

*Murphy v. DirecTV, Inc.*,
724 F.3d 1218 (9th Cir. 2012) ...................................................................................20

*Myers v. Experian Info. Sols. Inc.*,
734 F. Supp. 3d 912 (D. Ariz. 2024) ...........................................................................8

*Nghiem v. NEC Elec., Inc.*,
25 F.3d 1437 (9th Cir. 1994) ........................................................................................7

*Oregon-Pac. Forest Prods. Corp. v. Welsh Panel Co.*,
248 F. Supp. 903 (D. Or. 1965) .................................................................................11

*Popular Enterp., LLC v. Webcom Media Group, Inc.*,
225 F.R.D. 560 (E.D. Tenn. 2004).............................................................................12

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
388 U.S. 395 (1967)..............................................................................................16, 17

*Reed v. Eastside Med. Ctr.*,
2020 WL 5659436 (N.D. Ga. Sept. 23, 2020) ..........................................................13

*Rent-A-Center, West, Inc. v. Jackson*,
561 U.S. 63 (2010)......................................................................................................14

*Riverside Chiropractic Grp. v. Mercury Ins. Co.*,
404 N.J. Super. 228, 961 A.2d 21 (App. Div. 2008) ..................................................11

*Sapan v. Directv, LLC*,
2023 WL 5505914 (C.D. Cal. June 9, 2023) .............................................................19

*Senkandwa v. Equifax Info. Servs. LLC*,
2019 WL 13255462 (C.D. Cal. Apr. 30, 2019) ..........................................................18

*Shearson/Am. Express, Inc. v. McMahon*,
482 U.S. 220 (1987).....................................................................................................8

## TABLE OF AUTHORITIES
(continued)

**Page**

*Siert v. Spiffy Franchising, LLC*,
2024 WL 5046727 (N.D. Cal. Dec. 9, 2024) ............................................................9

*Sightseer Enter., Inc. v. Verizon New Jersey Inc.*,
2023 WL 358564 (D.N.J. Jan. 23, 2023) ................................................................8

*Simula, Inc. v. Autoliv, Inc.*,
175 F.3d 716 (9th Cir. 1999) ............................................................................16, 19

*Smith v. Spizzirri*,
601 U.S. 472 (2024) ..............................................................................................21

*Stiener v. Apple Computer, Inc.*,
2007 WL 4219388 (N.D. Cal. Nov. 29, 2007) ......................................................21

*Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*,
925 F.2d 1136 (9th Cir. 1991) ................................................................................7

*Trout v. Comcast Cable Commc'ns, LLC*,
2018 WL 4638705 (N.D. Cal. Mar. 15, 2018) ......................................................12

*United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*,
363 U.S. 574 (1960) ................................................................................................8

*Velez v. Credit One Bank*,
2016 WL 324963 (E.D.N.Y. Jan. 25, 2016) ..........................................................11

*Vigil v. Sears Nat'l Bank*,
205 F Supp 2d 566 (E.D. La. 2002) ......................................................................12

*Wanless v. Peloton Interactive, Inc.*,
2023 WL 4086455 (E.D. Cal. June 20, 2023) ......................................................11

*Ware v. Golden 1 Credit Union, Inc.*,
375 F. Supp. 3d 1145 (E.D. Cal. 2019) ..................................................................6

*Weichert Co. Realtors v. Ryan*,
128 N.J. 427 (1992) ................................................................................................8

*Willamette Crest Gaming, LLC v. Play N Trade Franchise, Inc.*,
2009 WL 2243811 (D. Or. July 27, 2009) ............................................................18

*Wold v. Dell Fin. Servs., L.P.*,
598 F. Supp. 2d 984 (D. Minn. 2009) ..................................................................12

*Wynn Resorts, Ltd. v. Atl.-Pac. Cap., Inc.*,
497 F.App'x 740 (9th Cir. 2012) ..........................................................................19

*Zuniga v. Experian Info. Sols., Inc.*,
2024 WL 4818825 (E.D. Cal. Nov. 18, 2024) (same) ..........................................21

### STATUTES

9 U.S.C. § 1, *et seq.*.......................................................................... passim

47 U.S.C. § 227, *et seq.*...........................................................................2

## TABLE OF AUTHORITIES
(continued)

**Page**

### OTHER AUTHORITIES

*Restatement (Second) of Contracts* § 17(1) (1981)........................................................................7

### RULES

AAA Commercial Arbitration Rules, Rule R-7(a), available at
    https://adr.org/sites/default/files/Commercial%20Rules.pdf (last visited April 8, 2025)...........15

AAA Consumer Arbitration Rules, Rule 14(a) available at
    https://adr.org/sites/default/files/Consumer%20Rules.pdf (last visited April 8, 2025) ..............15

Fed. R. Civ. P. 12 .................................................................................................................................3

Fed. R. Civ. P. 56(c). ..........................................................................................................................8

## LR 7-1 CERTIFICATION

Pursuant to LR 7-1(a), the undersigned counsel for Defendant CHW Group, Inc., d/b/a Choice Home Warranty ("CHW"), certifies that counsel for CHW conferred with counsel for Plaintiff Leon Weingrad ("Plaintiff") via telephone on April 7, 2025 prior to filing this Motion. At that time, counsel for Plaintiff indicated that Plaintiff opposes the relief sought in this Motion.

## MOTION TO COMPEL ARBITRATION

CHW hereby respectfully moves this Court for an order compelling arbitration of all claims alleged in Plaintiff's Complaint (Dkt. 1, "Complaint") on an individual basis pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*, (the "FAA") and staying this case until the completion of said arbitration proceedings, accordingly. Alternatively, CHW respectfully requests that the Court order limited arbitration discovery and/or conduct an evidentiary hearing, per Section 4 of the FAA, should Plaintiff raise a genuine issue of material fact on the issue of contract formation. CHW also respectfully requests that Court refrain from entering a scheduling order and stay all non-arbitration related case deadlines at this time, pending resolution of this Motion.

In support of this Motion, CHW respectfully submits and relies upon the incorporated Memorandum of Points and Authorities below, and the evidence submitted in support hereof.

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION

CHW offers consumers comprehensive financial protection against the high cost of unexpected repair or replacement of major home appliances and other critical home systems (*e.g.*, air conditioning, plumbing, or electrical). Consumers may purchase this protection by entering into service contracts with CHW. These contracts, sold nationwide, contain various terms defining the relationship between CHW and the consumer, including in particular a binding individual arbitration provision and separate class action waiver clause. On February 4, 2025, Plaintiff

entered into such a service contract with CHW. Plaintiff admits he purchased this service contract in his Complaint, in fact. *See* Dkt. 1, ¶ 52. When entering into this binding legal contract with CHW, Plaintiff expressly agreed, *inter alia*, that: (1) "***[a]ny claim, dispute or controversy, regarding any contract, tort, statute, or otherwise, arising out of or relating to this Agreement or the relationships among the parties*** hereto shall be resolved by one arbitrator through ***binding arbitration*** administered by the American Arbitration Association ('AAA'), under the AAA Commercial or Consumer, as applicable, Rules in effect at the time of the filing";[1] (2) "[t]he ***arbitrator***, ***and not any federal, state, or local court, shall have the exclusive authority to resolve any dispute relating to the interpretation, applicability, unconscionability, arbitrability, enforceability, or formation of this Agreement***"; and (3) "[a]ny claim, dispute or controversy … ***must be brought in the parties' individual capacity, and not as a plaintiff or class member in any purported class***, collective, representative, multiple plaintiff, or similar proceeding." Declaration of Brian S. Tretter ("Tretter Decl."), filed herewith, at ¶¶ 9-12 & Exhibit ("Ex.") A thereto (all emphases added). These terms were presented to Plaintiff in a clear, conspicuous, and unambiguous manner and in plain English. And despite suggestions to the contrary in his pleading (*see* Dkt. 1, ¶ 53), these terms were provided to him for review. *See* Tretter Decl., ¶ 11.

In direct contravention of this valid and enforceable agreement to arbitrate, and despite his claims against CHW in this case being plainly within its broad scope and having waived his class action rights, however, Plaintiff filed his putative class action Complaint against CHW on March 3, 2025. *See generally* Dkt. 1. Therein, Plaintiff attempts to assert various violations of the federal Telephone Consumer Protection Act (*i.e.,* 47 U.S.C. § 227, *et seq.*, "TCPA"), on behalf of himself and two nationwide putative classes, based on one alleged "prerecorded call" and two live calls

---

[1] The cited "AAA Commercial or Consumer Rules" are hereafter referred to as the "AAA Rules."

made to his cell phone promoting CHW's services—including calls during which he inexplicably purchased a CHW service contract despite claiming he did not want one. *See* Dkt. 1, ¶¶ 37, 46, 52-55. CHW denies these allegations or that any violation occurred, but that is immaterial for present purposes, since this Court is not the proper forum for resolving his claims. That is because, by entering into a service contract with CHW, Plaintiff unequivocally agreed to arbitrate his TCPA claims against CHW on an individual basis only. And in that same contract, the parties clearly and unmistakably agreed to delegate all threshold questions of arbitrability exclusively to the arbitrator to decide, expressly and by incorporation of the AAA Rules. Thus, once this Court determines a binding arbitration agreement exists between the parties here—and there indisputably is one—then there is nothing left for the Court to rule on; and it is solely up to the arbitrator to decide whether his TCPA claims have any merit (and, as CHW will demonstrate to the arbitrator, they do not).[2]

Through this Motion, therefore, CHW seeks to compel Plaintiff to submit to such an individual arbitration, as he agreed. As the Court is aware, the FAA creates a strong presumption in favor of enforcing arbitration provisions, and requires courts to rigidly enforce arbitration agreements according to their terms—especially where, as here, the parties seek to achieve

---

[2] This Motion addresses only the parties' agreement to arbitrate because the Court's role in ruling on a motion to compel arbitration under the FAA does not include consideration of the underlying merits. *See Lifescan, Inc. v. Premier Diabetic Servs., Inc.,* 363 F.3d 1010, 1012 (9th Cir. 2004). Nevertheless, the Complaint lacks merit for several reasons, which CHW will present to the arbitrator, and this Motion satisfies CHW immediate obligation to respond to the Complaint. *See Lamkin v. Morinda Props. Weight Parcel, LLC,* 440 F.App'x 604, 607 (10th Cir. 2011) (citation omitted); *see also Marchand v. Northrop Grumman Corp.,* 2017 WL 2633132, at *6 (N.D. Cal. June 19, 2017) (finding that the time to file answer had not elapsed in light of defendant's motion to compel arbitration); *JS Barkats, PLLC v. BE, Inc.,* 2013 WL 444919, at *2 (S.D.N.Y. Feb. 6, 2013) ("[P]arties are permitted to file motions to stay in lieu of an answer or other dispositive motions."). Should the Court not compel arbitration or should the case proceed in this forum, however, CHW respectfully reserves the right to file a substantive motion to dismiss the Complaint under Rule 12 or another responsive pleading at a later date in accordance with any schedule set by the Court. *See Aetna Life Ins. Co. v. Alla Med. Servs., Inc.,* 855 F.2d 1470, 1475 (9th Cir. 1988); *see also Conrad v. Phone Dirs. Co.,* 583 F.3d 1376, 1382 n.2 (10th Cir. 2009) (recognizing a party may file a Rule 12 motion to dismiss complaint following denial of motion to compel arbitration).

streamlined proceedings and expeditious results. Moreover, courts in the Ninth Circuit and elsewhere have consistently and routinely enforced broad arbitration provisions, like those Plaintiff agreed to here. This Court should reach the same conclusion in the present case.

Accordingly, and because the broad scope of the binding arbitration provision at issue plainly applies to all of Plaintiff's claims against CHW as alleged in his Complaint—*i.e.,* communications he received relating to his service contract and his relationship with CHW—the Court should grant this Motion and compel Plaintiff to submit his claims to individual arbitration per the service contract at issue, stay this case until the completion of all arbitration proceedings, and stay all non-arbitration deadlines in this case pending resolution of this Motion.

## I.    RELEVANT FACTUAL BACKGROUND

According to CHW's records, Plaintiff entered into a service contract with CHW on or about February 4, 2025 (the "Contract"). *See* Tretter Decl. ¶¶ 7, 9, 11. CHW emailed Plaintiff a copy of the Contract on February 4, 2025, which was sent to the email address he provided and lays out in clear detail all the "Terms of Service Agreement" (the "Terms") of the Contract. *Id*. ¶ 11 and Ex. A at pp. 7-22. Plaintiff was also informed at that time, per CHW's business procedures, that the Contract was available for review any time via its online customer portal. *Id*. ¶ 11.

Among others, the Terms contain an arbitration provision (hereafter, the "Arbitration Agreement"), which is found in a section conspicuously labeled, and presented in bold capitalized letters, "**RESOLUTION OF DISPUTES-MANDATORY ARBITRATION**." *Id*., Ex. A at 13 (emphasis original). The Arbitration Agreement states, in pertinent part, as follows:

> 2. MANDATORY ARBITRATION: Any claim, dispute or controversy, regarding any contract, tort, statute, or otherwise, arising out of or relating to this Agreement or the relationships among the parties hereto shall be resolved by one arbitrator through binding arbitration administered by the American Arbitration Association ("AAA"), under the AAA Commercial or Consumer, as applicable, Rules in effect at the time of the filing. [] The arbitrator's decision shall be final, binding, and non-appealable. Judgment upon the award may be entered and enforced in any court

having jurisdiction. This clause is made pursuant to a transaction involving interstate commerce and shall be governed by the Federal Arbitration Act (9 U.S.C. § 1, et seq.). Neither party shall sue the other party in any court other than as provided herein for enforcement of this clause or of the arbitrator's award; any such suit may be brought only in Federal District Court, or if any such court lacks jurisdiction, in any state court that has jurisdiction. The arbitrator, and not any federal, state, or local court, shall have the exclusive authority to resolve any dispute relating to the interpretation, applicability, unconscionability, arbitrability, enforceability, or formation of this Agreement including any claim that all or any part of this Agreement is void or voidable. However, the preceding sentence shall not apply to the [separate] clause entitled "Class Action Waiver." THE PARTIES UNDERSTAND THAT THEY WOULD HAVE HAD A RIGHT TO LITIGATE THROUGH A COURT, TO HAVE A JUDGE OR JURY DECIDE THEIR CASE, HOWEVER, THEY UNDERSTAND AND CHOOSE TO HAVE ANY CLAIMS DECIDED THROUGH ARBITRATION.

*Id*. (capitalization original). Below this appears a separate "Class Action Waiver" clause, stating:

3. CLASS ACTION WAIVER: Any claim, dispute or controversy, regarding any contract, tort, statute, or otherwise, arising out of or relating to this agreement or the relationships among the parties hereto must be brought in the parties' individual capacity, and not as a plaintiff or class member in any purported class, collective, representative, multiple plaintiff, or similar proceeding ("Class Action"). The parties expressly waive any ability to maintain any Class Action in any forum. The arbitrator shall not have authority to combine or aggregate similar claims or conduct any Class Action nor make an award to any person or entity not a party to the arbitration. Any claim that all or part of this Class Action Waiver is unenforceable, unconscionable, void, or voidable may be determined only by a court of competent jurisdiction and not by an arbitrator. THE PARTIES UNDERSTAND THAT THEY WOULD HAVE HAD A RIGHT TO LITIGATE THROUGH A COURT, TO HAVE A JUDGE OR JURY DECIDE THEIR CASE AND TO BE A PARTY TO A CLASS OR REPRESENTATIVE ACTION, HOWEVER, THEY UNDERSTAND AND CHOOSE TO HAVE ANY CLAIMS DECIDED INDIVIDUALLY, THROUGH ARBITRATION.

*Id*. at 13-14 (capitalization original).

Despite the foregoing, however, Plaintiff commenced this putative class action lawsuit on the grounds that CHW called him regarding its services about which Plaintiff inquired and purchased, in purported violation of the TCPA. *See* Dkt. 1, ¶¶ 37, 46, 52-55. Importantly, though, Plaintiff **readily admits** that he voluntarily entered into the Contract with CHW (*see* Dkt. 1 ¶ 52), which contains a valid and binding arbitration agreement and class waiver, requiring him to

arbitrate all and all possible claims against CHW only on an individual basis, as discussed above.

II.    <u>**ARGUMENT**</u>

The FAA "requires courts to enforce the bargain of the parties to arbitrate" and "leaves no place for the exercise of discretion by a district court…." *KPMG LLP v. Cocchi,* 565 U.S. 18, 21-22 (2011). As such, the Court's role in ruling on a motion to compel arbitration like this is generally limited to determining whether the parties agreed to arbitrate the claims at issue. *See AT & T Techs., Inc. v. Commc'ns Workers of Am.,* 475 U.S. 643, 649–50 (1986). Such is true in this case.

When he entered into his Contract with CHW, Plaintiff voluntarily agreed to abide by CHW's Terms containing the broad Arbitration Agreement and class action waiver described above, which mandate that he arbitrate "[a]ny claim, dispute or controversy, regarding any contract, tort, statute, or otherwise, arising out of or relating to [the Contract] or the relationships among the parties" thereto strictly on an individual basis. While Plaintiff may contend in response to this Motion (albeit incorrectly) that the Arbitration Agreement is not enforceable under state law or that his TCPA claims are beyond its scope, those arbitrability issues have been clearly and unmistakably delegated solely to the arbitrator to decide. But even if this Court reaches the question of arbitrability (and it should not), the answer clearly favors CHW. Plaintiff should, therefore, be compelled to arbitrate his claims on an individual basis, and this matter must be stayed.

A.    **A Valid and Binding Agreement to Arbitrate Exists in this Case.**

Again, because the merits of the underlying dispute cannot be considered when deciding a motion to compel arbitration, this Court may, at most, determine <u>only</u>: (1) whether a valid arbitration agreement exists, and (2) whether the arbitration agreement encompasses the dispute at issue. *See Chiron Corp. v. Ortho Diagnostic Sys., Inc*., 207 F.3d 1126, 1130 (9th Cir. 2000) (citing 9 U.S.C. § 4); *see also Ware v. Golden 1 Credit Union, Inc*., 375 F. Supp. 3d 1145, 1150 (E.D. Cal. 2019) (same). If the response is affirmative on both fronts, as it is here, "the [FAA] requires

the court to enforce the arbitration agreement in accordance with its terms." *Chiron,* 207 F.3d at 1130. Importantly, the party challenging the arbitration clause (Plaintiff) "bear[s] the burden of proving that the provision is unenforceable" based on validity or scope. *Mortensen v. Bresnan Communs., LLC*, 722 F.3d 1151, 1157 (9th Cir. 2013) (citing *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000)). As shown below, Plaintiff cannot meet this burden in this case.

The existence of a valid arbitration agreement is a threshold matter that must be established before the FAA can be invoked to enforce it. *See Cleveland v. Trapalis,* 2003 WL 23538026, at *2 (D. Or. July 30, 2003) (citing *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1140-41 (9th Cir. 1991)). When deciding whether a valid arbitration agreement exists in the first instance, federal courts generally apply "ordinary state-law principles that govern the formation of contracts." *First Options of Chi., Inc. v. Kaplan,* 514 U.S. 938, 944 (1995). Under Oregon law, as is common everywhere else, contract formation requires "mutual assent to the exchange, which may be expressed through words or inferred from the actions of the parties." *Homestyle Direct, LLC v. DHS,* 354 Or. 253, 262, 311 (2013); *see also Nghiem v. NEC Elec., Inc.,* 25 F.3d 1437, 1439 (9th Cir. 1994) ("While the FAA requires a writing, it does not require that the writing be signed by the parties.") (quotation marks and citation omitted); *Ken Hood Const. Co. v. Pac. Coast Const., Inc.*, 201 Or. App. 568, 577 (2005) ("Mutual assent may be inferred from the conduct of the parties."); *Restatement (Second) of Contracts* § 17(1) (1981). The same is true in New Jersey, which the Terms provide as the applicable law here. *See* Tretter Decl., Ex. A at 14; *see, e.g., Falk v. Aetna Life Ins. Co.,* 2019 WL 4143882, at *4 (D.N.J. Aug. 31, 2019) ("New Jersey law does not require a physical signature for there to be a valid agreement" to arbitrate.); *DirecTech Del., Inc. v. Allstar Satellite, Inc.,* 2010 WL 1838573, at *3 (D.N.J. May 6, 2010) (applying New Jersey law, holding the plaintiff "tendered sufficient performance consistent with the terms of the contract to

manifest acceptance of the contract" despite not signing); *Sightseer Enter., Inc. v. Verizon New Jersey Inc.,* 2023 WL 358564, at *6 (D.N.J. Jan. 23, 2023) ("Where an offeree gives no indication that he objects to any of the offers' essential terms, and passively accepts the benefits of an offeror's performance, the offeree has impliedly manifested his unconditional assent to the terms of the offer.") (citing *Weichert Co. Realtors v. Ryan*, 128 N.J. 427, 436-37 (1992)).

Consistent with the strong federal policy in favor of arbitration, however, courts in this Circuit have recognized that arbitration agreements governed by the FAA, such as the one at issue here, are generally presumed to be valid and enforceable. *See, e.g., Myers v. Experian Info. Sols. Inc.,* 734 F. Supp. 3d 912, 918 (D. Ariz. 2024) (citing *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987)); *see also Briede v. 24 Hour Fitness, USA, Inc.,* 2010 WL 4236929, at *2 (D. Or. Oct. 21, 2010) ("Under Oregon law, arbitration clauses are presumed valid 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'") (quoting *Livingston v. Metro. Pediatrics, LLC,* 227 P.3d 796, 803 (Or .Ct. App. 2010) *(quoting United Steelworkers of Am. v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582 (1960)). The evidentiary hurdle that CHW must clear to show the existence of an arbitration agreement between Plaintiff and CHW is not particularly high either, and in that regard CHW need only demonstrate "the existence of an agreement to arbitrate [in this case] by a preponderance of the evidence." *Knutson v. Sirius XM Radio Inc.*, 771 F. 3d 559, 565 (9th Cir. 2014).[3] Once CHW establishes the existence of an arbitration agreement, the burden then shifts to Plaintiff to establish a factual basis for a defense to its enforcement, if any. *See id.*

Additionally, courts in this Circuit apply the familiar Rule 56(c) summary judgment standard

---

[3] Indeed, as one court in this District aptly commented, "[d]efendants, as the party seeking to compel arbitration, need only slightly tip the scales in their favor in order to prevail." *Campos v. Bluestem Brands, Inc*., 2016 WL 297429, at *8 (D. Or. Jan. 22, 2016) (citing *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal.,* 508 U.S. 602, 622 (1993)).

to determine the existence of an arbitration agreement in this context. *See, e.g., Hansen v. LMB Mortg. Servs., Inc.,* 1 F.4th 667, 670 (9th Cir. 2021) (collecting cases). This generally means that CHW bears the initial burden of presenting evidence sufficient to demonstrate the existence of an arbitration agreement between the parties; if it does so, the burden then shifts to Plaintiff to "present specific facts" (*i.e.*, evidence) showing that there is a genuine issue of material fact on the contract formation issue. *Siert v. Spiffy Franchising, LLC*, 2024 WL 5046727, at *2 (N.D. Cal. Dec. 9, 2024) (collecting cases); *see also Gonzalez v. Hoovestol, Inc.,* 2024 WL 1722333, at *2 (E.D. Cal. Apr. 19, 2024); *Gonzalez v. Comenity Bank,* 2019 WL 5596800, at *4 (E.D. Cal. Oct. 30, 2019).

As applied here, it is clear that a valid and binding arbitration agreement exists between Plaintiff and CHW. The evidence shows that Plaintiff (1) was offered the Contract and he accepted it, and (2) was provided with copies of the essential Terms (including the subject Arbitration Agreement) when he agreed to it in February 2025. *See* Tretter Decl. ¶¶ 9-11. Moreover, the validity of the Contract cannot be seriously questioned, as ***Plaintiff readily admits in his Complaint*** that he entered into the Contract and does not challenge contract formation. *See* Dkt. 1, ¶ 52; *see also Fuqua v. Kenan Advantage Grp., Inc.*, 2012 WL 2861613, at *6 (D. Or. Apr. 13, 2012), *report and rec. adopted*, 2012 WL 2861660 (D. Or. July 11, 2012) ("Oregon law does not necessarily require a signature to create a contract. If a written contract is intended merely to serve the purpose of a memorial of a completed contract already made, the failure to execute the writing does not prevent the existing agreement from binding the parties[.]") (quotation marks and citation omitted); *Bischoff v. DirecTV, Inc.*, 180 F. Supp. 2d 1097, 1103 (C.D. Cal. 2002) (enforcing written arbitration provision sent after plaintiff agreed to purchase the defendant's services over the phone, noting "[p]ractical business realities make it unrealistic to expect DirecTV … to negotiate all of the terms of their customer contracts, including arbitration provisions, with each customer before initiating

service"); *Androutsakos v. M/V PSARA,* 2003 WL 23538012, at *3 (D. Or. July 7, 2003) ("A forum selection clause may be valid even if one party did not and could not bargain concerning its inclusion in an agreement.") (citing *Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585, 587–88 (1991) (holding passenger who entered into contract with defendant cruise company was bound by forum selection clause even though paid for cruise before receiving ticket containing the clause)); *DCIPA, LLC v. Lucile Slater Packard Children's Hosp. at Stanford*, 868 F. Supp. 2d 1042, 1053 (D. Or. 2011) (holding, under Oregon law, "an enforceable contract does not necessarily require a 'meeting of the minds,' as long as the parties' intent to enter into a contract can be shown through words or conduct").

Further, the Arbitration Agreement provides, in capital letters, *inter alia* that "***THE PARTIES*** UNDERSTAND THAT THEY WOULD HAVE HAD A RIGHT TO LITIGATE THROUGH A COURT, TO HAVE A JUDGE OR JURY DECIDE THEIR CASE, HOWEVER, THEY UNDERSTAND AND ***CHOOSE TO HAVE ANY CLAIMS DECIDED THROUGH ARBITRATION***." *See* Tretter Decl., Ex. A at 13 (emphasis added). This makes plain that, by accepting, Plaintiff was ***choosing*** to arbitrate any claims against CHW. Further, the Terms as a whole make even more clear that they are part of a binding legal agreement governing the services to be provided by CHW and the parties' resulting relationships, obligations, and rights under the Contract. *See, e.g., id.,* Ex. A at 7 ("Our sole responsibility will be to arrange for a qualified Service Provider to repair or Replace…, at Our expense … in accordance with the terms and conditions of this Agreement…. Your Agreement term …, Your Agreement Fee, Your Service Fee, and Your equipment, systems, and appliances covered under this Agreement, are set forth in Your Coverage Details."); 7-10 (describing Plaintiff's obligations when making a service request and coverage provided by CHW); 10-13 (setting forth various other legal obligations and limitations of liability); 14-16 (defining the parties and various contractual terms); 27 (indicating a "Home Warranty

Contract [is] Enclosed" and inviting Plaintiff to "Please take some time to review your Contract.").

Whether Plaintiff bothered to read those Terms is immaterial to whether a valid agreement was

formed. *See Wanless v. Peloton Interactive, Inc*., 2023 WL 4086455, at *5 (E.D. Cal. June 20, 2023)

(citing *Oregon-Pac. Forest Prods. Corp. v. Welsh Panel Co.,* 248 F. Supp. 903, 908 (D. Or. 1965)

("[I]t is no defense that a party, seeking to avoid the contract, did not read it.")).[4] Therefore, the

Terms, and thus the Arbitration Agreement within, represent a valid and enforceable contract.

In his Complaint, Plaintiff suggests he never received a copy of the Contract. *See* Dkt. 1, ¶

53. CHW presumes that Plaintiff included this allegation because he will argue in response to this

Motion that this somehow impacts whether an arbitration agreement was formed in this case.

Plaintiff would be wrong. Indeed, Plaintiff was sent a copy of the Contract at the email address he

provided when he purchased it. *See* Tretter Decl., ¶ 11. It is also CHW's practice to inform purchasers

of its service contracts, at the time of purchase, that their contracts can also be assessed online at any

time, through its customer portal. *Id*. The bottom line is that CHW provided the Contract to him, and

he plainly had the opportunity to review the Terms therein. That is enough to form a valid arbitration

agreement, as myriad courts have found. *See, e.g., Riverside Chiropractic Grp. v. Mercury Ins. Co.,*

404 N.J. Super. 228, 238, 961 A.2d 21, 27 (App. Div. 2008) ("The fact that plaintiff did not read the

contract before beginning the arbitration process is immaterial. As a general rule, one who does not

choose to read a contract before signing it cannot later relieve himself of its burdens. The onus was

on plaintiff to obtain a copy of the contract in a timely manner to ascertain what rights it waived[.]")

(internal quotations and citation omitted); *Velez v. Credit One Bank,* 2016 WL 324963, at *3

(E.D.N.Y. Jan. 25, 2016) (rejecting similar "lack of notice" contention and compelling arbitration

---

[4] *See also Fteja v. Facebook, Inc.,* 841 F. Supp. 2d 829, 839-40 (S.D.N.Y. 2012) (holding when a consumer is prompted to examine terms of sale located on another page available via hyperlink, "[w]hether or not the consumer bothers to look is irrelevant" because "[f]ailure to read a contract before agreement to its terms does not relieve a party of its obligations under the contract").

because given affidavit explaining defendant "mailed Plaintiff . . . [an actual] copy of [the terms per its usual business practice and "thereby put Plaintiff on notice of the terms governing her use"); *Marley v. PricewaterhouseCoopers LLP*, 2022 WL 500579, at *3 (D.N.J. Feb. 18, 2022) (compelling arbitration where plaintiff merely claimed she did not recall receiving notice of the agreement); *Montoya v. Comcast Corp.,* 2016 WL 5340651, at *7 (E.D. Cal. Sept. 13, 2016) (compelling arbitration where plaintiff was provided copy of agreement containing arbitration clause within "Welcome Kit"); *Hartranft v. Encore Cap. Grp., Inc.*, 543 F. Supp. 3d 893, 920–21 (S.D. Cal. 2021) (finding arbitration agreement existed in TCPA case where defendant stated in a sworn declaration that the agreement was sent to plaintiff per its usual business practices); *Trout v. Comcast Cable Commc'ns, LLC,* 2018 WL 4638705, at *1 (N.D. Cal. Mar. 15, 2018) (same).[5] This Court should rule similarly in this case, and rule that a valid arbitration agreement exists.

## B. Any Challenge to Contract Formation Possibly Raises a Material Issue of Fact, Requiring Arbitration-Related Discovery and/or Trial on That Issue.

Any challenge to the Contract's formation would not only be invalid and unavailing for the reasons above, but also would not provide this Court grounds to deny this Motion and deprive CHW of its bargained-for arbitral rights. Rather, any such contention could, at best, create a material issue of fact that Section 4 of the FAA mandates must be resolved through an evidentiary hearing, before the Court rules on the Motion. *See* 9 U.S.C. § 4 ("If the making of the arbitration

---

[5] *See also Wold v. Dell Fin. Servs., L.P.,* 598 F. Supp. 2d 984, 988 (D. Minn. 2009) (buyer's denial of receipt of arbitration agreement insufficient to overcome presumption of receipt, arising from company's general policy of sending agreements to customers); *Howard v. Ferrellgas Partners, L.P.,* 92 F. Supp. 3d 1115, 1135 (D. Kan. 2015) (same); *Popular Enterp., LLC v. Webcom Media Group, Inc*., 225 F.R.D. 560, 562 (E.D. Tenn. 2004) (finding that an email sent to an email address supplied by a party to its domain name registrar that did not bounce back presumably reached that party); *Vigil v. Sears Nat'l Bank*, 205 F Supp 2d 566, 568 (E.D. La. 2002) (mailed arbitration clause enforceable); *Am. Fam. Mut. Ins. Co. v. Vein Centers for Excellence, Inc.,* 912 F.3d 1076, 1083 (8th Cir. 2019) ("There is a presumption that a letter duly mailed has been received by the addressee. This presumption of receipt by the addressee can be triggered even in the absence of direct proof that a particular letter was mailed.") (internal quotations and citation omitted).

agreement … be in issue, the court shall proceed summarily to the trial thereof."); *see also Hansen*, 1 F.4th at 672 ("[O]nce a district court concludes that there are genuine disputes of material fact as to whether the parties formed an arbitration agreement, the court must proceed without delay to a trial on arbitrability [under Section 4 of the FAA] and hold any motion to compel arbitration in abeyance until the factual issues have been resolved.") (collecting cases).

Further, any factual dispute that may arise regarding contract formation here can be addressed, and quickly resolved, through limited and straightforward fact discovery on that issue. As such, should the Court determine that Plaintiff raised a genuine issue of material fact on the contract formation issue, the Court should permit CHW limited arbitration discovery before conducting an evidentiary hearing or ruling hereon. *See, e.g., Knapke v. PeopleConnect, Inc*, 38 F.4th 824, 829-833 (9th Cir. 2022) (holding where respondent raises a genuine issue of fact on arbitration agreement formation and, the movant has a right to conduct discovery on such arbitrability issues before the court decides the motion, noting "the FAA's procedure mirrors the three phases of federal civil lawsuits: a motion to compel arbitration akin to a motion to dismiss; followed by optional discovery before summary judgment, if the motion is denied; followed by a mini-trial, if necessary"); *Hansen*, 1 F.4th at 670 ("[A] court is not authorized to dispose of a motion to compel arbitration until after [material] factual disputes have been resolved.").[6]

In short, based on the record currently before the Court, a valid and binding agreement to arbitrate exists. But even assuming *arguendo* that Plaintiff introduces some component evidence to the contrary, the remedy is not to deny this Motion but to permit CHW limited arbitration discovery on the issue of contract formation and/or to conduct an evidentiary hearing to resolve

---

[6] *See also Reed v. Eastside Med. Ctr.*, 2020 WL 5659436, *7 (N.D. Ga. Sept. 23, 2020) ("Court finds that limited discovery and further briefing is necessary concerning whether Plaintiff assented to the Arbitration Agreement. Only then will the Court be able to determine whether there exists a genuine issue of material fact on this question that renders a trial of the issue unnecessary.").

Page 13 - DEFENDANT'S MOTION TO COMPEL ARBITRATION AND TO STAY CASE

any remaining dispute regarding the existence of an arbitration agreement, as the FAA mandates.

### C.    Any Disputes Regarding Arbitrability Have Been Delegated to the Arbitrator.

At this point, this Court need not rule any further (and thus should compel Plaintiff to arbitrate) because only the arbitrator has the power to decide all arbitrability disputes. Under federal law, "parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010). Thus, once the Court determines an agreement was formed, and "unless [a plaintiff] challenge[s] [a] delegation provision *specifically*, [a court] must treat it as valid ... and *must enforce it* ... leaving any challenge to the validity of the [agreement to arbitrate] *as a whole* for the arbitrator." *Id.* at 72 (emphasis added). In other words, where the parties "clear[ly] and unmistakab[ly]" delegate these questions to the arbitrator, *id.* at 79, the Court "may not override the contract" and "possesses no power to decide the arbitrability issue"—*even if* the court "thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S.Ct. 524, 529 (2019). "[W]hen the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract." *Henry Schein*, 139 S. Ct. at 528; *see also Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021, 1029 (9th Cir. 2022).

Here, the Arbitration Agreement clearly states that "[t]he *arbitrator*, and not any federal, state, or local court, shall have the *exclusive authority* to resolve any dispute relating to the interpretation, applicability, unconscionability, *arbitrability*, enforceability, or formation of this Agreement including any claim that all or any part of this Agreement is void or voidable." Tretter Decl., Ex. A at 13 (emphasis added). Moreover, even if there was some doubt as to whether the language that CHW used in the Contract "clearly and unmistakably" delegated the arbitrability of

any claim to the arbitrator (and there is none), the Terms' reference to the American Arbitration

Association's ("AAA") rules and procedures provides further support for the delegation of this

threshold question to the arbitrator. *See* Tretter Decl., Ex. A at 13. Federal courts have widely and

consistently held that incorporation of the AAA Rules, as the parties have agreed to here, alone serves

as "clear and unmistakable" evidence of the parties' intent to delegate all arbitrability disputes to the

arbitrator. *See Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) ("[V]irtually every circuit

to have considered the issue has determined that incorporation of the AAA arbitration rules

constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability.")

(internal quotations and alterations omitted). [7] Thus, both expressly and by incorporation of the AAA

Rules, the parties "clearly and unmistakably agreed to delegate to the arbitrator any disputes about

the scope of arbitration over the claims Plaintiff raises in this action" through the contract language

"requiring arbitration of disputes over the 'scope or applicability' of arbitration." *Bank Leumi, U.S.*

*v. Miramax Distribution Servs., LLC,* 2018 WL 7568361, at *6 (C.D. Cal. Dec. 27, 2018) (citing

*Momot v. Mastro*, 652 F.3d 982, 988 (9th Cir. 2011)). Consequently, there can be no debate that all

arbitrability issues in this case have been delegated solely to the arbitrator, not this Court, to decide.

###### D.     The Arbitration Agreement Is Enforceable Under the FAA, and Plaintiff's Underlying TCPA Claims are Within the Arbitration Agreement's Broad Scope.

Should the Court reach the question of arbitrability despite it having been delegated to the

arbitrator (and it should not), the Arbitration Agreement constitutes a valid and enforceable contract

mandating that this dispute be arbitrated under the FAA. Per the Ninth Circuit, "the standard for

---

[7]     *See also* AAA Consumer Arbitration Rules, Rule 14(a) available at
https://adr.org/sites/default/files/Consumer%20Rules.pdf (last visited April 8, 2025) ("The arbitrator
shall have the power to rule on his or her own jurisdiction, including any objections with respect to
the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim…"),
and AAA Commercial Arbitration Rules, Rule R-7(a), available at
https://adr.org/sites/default/files/Commercial%20Rules.pdf (last visited April 8, 2025) (same).

demonstrating arbitrability is not high," and agreements to arbitrate "are to be rigorously enforced." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999). The Supreme Court has also made clear that arbitration agreements must be enforced as written pursuant to the FAA. *See, e.g., AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 336 (2011). Further, arbitration agreements subject to the FAA's requirements must only be a "contract evidencing a transaction involving commerce." 9 U.S.C. § 2. In this regard, the Supreme Court the term "involving commerce" as used in the FAA is "the functional equivalent of the more familiar 'affecting commerce'—words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power." *Citizens Bank v. Alafabco, Inc*., 539 U.S. 52, 56 (2002) (finding requisite commerce for FAA coverage even when individual transaction did not have "any specific effect upon interstate commerce" because defendant engaged in business of the type at issue in multiple states). Therefore, the FAA is extremely broad and applies to any transaction possibly ***directly or indirectly*** affecting interstate commerce. *See Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 277 (1995); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 401 (1967).

As applied here, the Arbitration Agreement at issue clearly states that "[t]his clause is made pursuant to a transaction involving interstate commerce and shall be governed by the Federal Arbitration Act (9 U.S.C. § 1, et seq.)." Tretter Decl., Ex. A at 13. Per the Complaint, Plaintiff is an Oregon resident. *See* Dkt. 1, ¶ 8. In contrast, CHW is incorporated in the State of Delaware, maintains its principal place of business in the State of New Jersey, and it sells policies to consumers nationwide. *See* Tretter Decl. ¶ 8. Further, Plaintiff alleges the subject calls were received in Oregon in purported violation of the TCPA. Dkt. 1, ¶¶ 26, 28, 37, 46, 55. Because the Arbitration Agreement is a "contract evidencing a transaction involving interstate commerce," the FAA applies in this case.

Moreover, the Arbitration Agreement is indisputably enforceable under the FAA. As noted

above, Section 2 of the FAA broadly provides that arbitration provisions in "a contract evidencing a transaction involving commerce … ***shall be valid, irrevocable, and enforceable***, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (emphasis added). Thus, "Congress has instructed federal courts to enforce arbitration agreements according to their terms—***including terms providing for individualized proceedings***." *Epic Sys. Corp. v. Lewis*, 138 S.Ct. 1612, 1619 (2018) (emphasis added); *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011) ("The 'principal purpose' of the FAA is to 'ensur[e] that private arbitration agreements are enforced according to their terms.'"); *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 221 (1985) (holding federal courts must "rigorously enforce agreements to arbitrate").

In short, if a court finds a valid agreement to arbitrate exists and that it encompasses the dispute (which is true here), the FAA ***requires*** that the court refer the matter to arbitration. *Dean Witter,* 470 U.S. at 218. Once a court makes such a determination, it lacks authority to address the merits of that claim. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 40 (1967); *AT&T Techs.*, 475 U.S. at 649-50. Furthermore, the party resisting arbitration (*i.e.*, Plaintiff) bears the sole burden of showing the arbitration agreement is invalid or does not encompass the claims at issue. *See Green Tree Fin. Corp.-Ala.*, 531 U.S. at 91-92. Plaintiff cannot make such a showing here.

On the one hand, there can be no debate a valid and enforceable arbitration exists in this case, given the evidence. *See* discussion at pp. 4-12, *supra*. On the other, the Supreme Court has made clear that arbitration agreements must be analyzed against the backdrop of the FAA, which reflects a "liberal federal policy favoring arbitration." *Concepcion*, 563 U.S. at 339, 344 (internal quotations omitted); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *Marmet Health Care Ctr., Inc. v. Brown,* 565 U.S. 530, 533 (2012). Thus, the Supreme Court has held that Congress enacted the FAA "to reverse longstanding judicial hostility to arbitration

agreements and to place them on the same footing as other contracts." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 89 (2000) (internal quotation and alteration omitted). As such, the FAA leaves no place for discretion by a district court, but instead mandates that district courts direct parties to proceed to arbitration on issues subject to their arbitration agreement. *See Dean Witter*, 470 U.S. at 221. And consistent with the foregoing principles, "[a]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25.

As applied here, Plaintiff cannot evade his contractual obligation to proceed with "any" dispute with CHW in the arbitral forum (which would include his TCPA claims) on the grounds that the dispute is not within the scope of the Arbitration Agreement. Indeed, the Arbitration Agreement at issue broadly covers "***[a]ny claim, dispute or controversy, regarding any contract, tort, statute, or otherwise, arising out of or relating to this Agreement or the relationships among the parties***...." Tretter Decl., Ex. A at 13 (emphasis added). Myriad courts in this Circuit have held that the scope of such an arbitration agreement is broad enough to cover all possible disputes between the contracting parties. *See, e.g., Willamette Crest Gaming, LLC v. Play N Trade Franchise, Inc.*, 2009 WL 2243811, at *3 (D. Or. July 27, 2009) (characterizing arbitration clause covering "any dispute … arising out of or relating to this Agreement" as "very broad"); *Chiron Corp.*, 207 F.3d at 1131 (holding that arbitration clause covering "[a]ny dispute, controversy or claim arising out of or relating to" the parties' agreement is "broad and far reaching"); *Senkandwa v. Equifax Info. Servs. LLC*, 2019 WL 13255462, at *2 (C.D. Cal. Apr. 30, 2019) ("arbitration agreements that apply to all disputes that arise out of and in connection with or relating to an agreement or the services provided therein are interpreted broadly to encompass all manner of disputes between the parties."); *Edwards v. Verizon*, 2015 WL 13654015, at *4 (C.D. Cal. Jan. 26, 2015) (compelling claims to arbitration based on provision stating "*any dispute* that in any way relates to or arises out

Page 18 - DEFENDANT'S MOTION TO COMPEL ARBITRATION AND TO STAY CASE

of this agreement" will be resolved through arbitration (emphasis in original)); *Wynn Resorts, Ltd.
v. Atl.-Pac. Cap., Inc.*, 497 F.App'x 740, 742 (9th Cir. 2012) (broadly construing a provision that
stated "[a]ny dispute, controversy or claim arising from or relating to this Agreement shall be
submitted to and determined by binding arbitration" to compel claims to arbitration); *Britton v.
Co-op Banking Grp.,* 4 F.3d 742, 745 (9th Cir. 1993) (The phrase "arising out of or relating to" in
an arbitration agreement "is routinely used … to secure the broadest possible arbitration
coverage."). Indeed, the Ninth Circuit has recognized that such broadly-worded agreements
require arbitration of all disputes that just "touch matters covered by the contract containing the
arbitration clause." *Simula, Inc.*, 175 F.3d at 721. This Court should rule similarly in this case.

In fact, the Arbitration Agreement is so broadly that it covers "any" disputes "regarding any
contract, tort, statute, or otherwise" possibly "arising out of or relating to" the Contract or the
"relationships" between Plaintiff and CHW, *regardless of whether involving calls or other
communications*. And it is evident that Plaintiff's TCPA claims are based on calls allegedly received
from or on behalf of CHW related to the services that he inquired about and purchased (*i.e.,* the
Contract itself). *See* Tretter Decl. ¶¶ 9, 13; *see also* Dkt. 1, ¶¶ 49-52, 55-58.[8] As such, there can be
no question that Plaintiff's underlying TCPA claims fall within the very broad scope of the
Arbitration Agreement. *See, e.g., Sapan v. Directv, LLC*, 2023 WL 5505914, at *6 (C.D. Cal. June
9, 2023) (compelling arbitration of TCPA claims where internet services agreement provided that
"all claims" are subject to arbitration); *Hartranft v. Encore Cap. Grp., Inc.,* 543 F. Supp. 3d 893,
922 (S.D. Cal. 2021) (compelling arbitration of TCPA claims where credit card agreement

---

[8] While Plaintiff suggests that the first alleged call was made prior to Plaintiff agreeing to the
Contract, the alleged second and third calls (per Plaintiff) concerned the negotiation and acceptance
of the Contract, and the services provided thereunder. *See* Dkt. 1, ¶¶ 37, 47-52, 55-58. Moreover,
CHW does not make unsolicited calls. *See* Tretter Decl. ¶ 13. Thus, any calls Plaintiff would have
received in this case would have to have been solicited by him, to the purchase of the Contract.

provided that "all claims" are subject to arbitration); *Brady v. LendingClub Bank, Nat'l Ass'n*, 2023 WL 3689613, at *2 (S.D. Cal. May 26, 2023) (compelling arbitration of TCPA claims where loan agreement provided that "all claims" are subject to arbitration). And even if there were some ambiguity here, CHW reiterates that "[a]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration" under federal law. *Moses H. Cone*, 460 U.S. at 24-25.

### E.    Any Arbitration is Required to Proceed Solely on an Individual Basis.

Any arbitration in this case must proceed on an individual basis. For one thing, the Terms contain an explicit class action waiver clause. *See* Tretter Decl. ¶ 12, Ex. A. at 13. The Ninth Circuit has held that class waivers in arbitration provisions are enforceable. *See Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1225-26 (9th Cir. 2012) ("Importantly, the FAA meant what the [Supreme] Court in *Concepcion* says it means—that the Customer Agreement's class waiver is enforceable….." (citing *Concepcion*, 563 U.S. at 1748)). *See also Concepcion*, 563 U.S. at 352; *Am. Express Co. v. Italian Colors Rest.*, 133 S.Ct. 2304 (2013); *DIRECTV, Inc. v. Imburgia*, 136 S.Ct. 463, 471 (2015). For another, federal district courts have been instructed by the Supreme Court to assume that parties agreed to arbitrate only an ***individual*** basis, unless the applicable arbitration agreement clearly and expressly provides for class-wide arbitration, and that silence or ambiguity in the agreement on this front should not be construed against the contract's drafter. *See, e.g., Lamps Plus, Inc. v. Varela,* 139 S. Ct. 1407, 1416 (2019); *Knecht v. Lanphere Enterprises Inc*., 2020 WL 4910561, at *3 (D. Or. July 30, 2020), *report and rec. adopted,* 2020 WL 4910289 (D. Or. Aug. 19, 2020) (applying *Lamps*). Here, however, there is no silence or ambiguity on whether Plaintiff waived his class action rights, given the express waiver clause in the Terms. As such, individual arbitration must be compelled because Plaintiff expressly waived his right to bring his claims on a class basis.

### F.    The FAA Requires That This Action Be Stayed Pending Arbitration.

Given the foregoing, the FAA requires a stay of this action pending arbitration. *See* 9

U.S.C. § 3 ("If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration … the court in which such suit is pending, upon being satisfied that the issue involved … is referable to arbitration … shall on application of one of the parties stay the trial of the action until such arbitration has been had"); *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024) ("When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding.").

### G.    The Court Should Stay All Case Deadlines While Considering this Motion.

Lastly, federal courts in the Ninth Circuit (and elsewhere) routinely stay discovery and other deadlines in cases where a motion to compel arbitration is pending. *See, e.g., Stiener v. Apple Computer, Inc.*, 2007 WL 4219388, at *1-2 (N.D. Cal. Nov. 29, 2007) (granting motion to stay obligations under the court's scheduling order pending resolution of defendant's motion to compel arbitration because, if the motion is granted, the case will proceed to arbitration and "responsibility for the conduct of discovery [will] lie[] with the arbitrators," and noting that granting short stays of initial scheduling obligations and discovery are a "common practice" among federal courts (citing various cases)); *Ferrell v. AppFolio, Inc.,* 2024 WL 132223, at *2 (C.D. Cal. Jan. 8, 2024) (staying discovery during pendency of motion to compel arbitration to prevent duplicative efforts and inefficiency); *Huynh v. Allstate Northbrook Indem. Co.,* 2024 WL 2883228, at *3 (E.D. Cal. May 24, 2024) (staying discovery during pendency of motion to compel arbitration to prevent unnecessary discovery); *Zuniga v. Experian Info. Sols., Inc.*, 2024 WL 4818825, at *3 (E.D. Cal. Nov. 18, 2024) (same).[9] As applied in the present case, because this Court's ruling on the Motion may dispose of the action in this court, a stay of all discovery and other case management deadlines

---

[9] *See also Little v. Midland Credit Mgmt., Inc.*, 2020 WL 4745191 (S.D. Ohio Aug. 17, 2020) (staying discovery during the pendency of motion to compel arbitration because the burden of discovery on defendant outweighs the hardship to plaintiff resulting from a temporary stay).

would avoid unnecessary time, expense, and effort by the parties and the Court, if this Motion is granted. Consequently, this Court should enter such a stay while it decides this Motion.

## III.     <u>CONCLUSION</u>

For the reasons above, the Court should enter an order: (i) compelling Plaintiff to arbitrate his claims in this case on an individual basis, (ii) staying this action in favor of arbitration and during the pendency of this motion, and (iii) granting all other relief deemed just and proper (including but not limited to ordering limited arbitration discovery or a hearing, if necessary).


Dated: April 8, 2025                         Respectfully submitted,

                                             MANATT, PHELPS & PHILLIPS, LLP

                                             By: */s/ A. Paul Heeringa*
                                                  A. Paul Heeringa, *admitted pro hac vice*
                                                  Email: pheeringa@manatt.com
                                                  151 N. Franklin Street, Suite 2600
                                                  Chicago, IL 60606
                                                  Telephone: (312) 529-6308

                                                  Jeffrey G. Bradford, OSB No. 133080
                                                  E-mail:    jeff.bradford@tonkon.com
                                                  TONKON TORP LLP
                                                  888 SW 5th Ave., Suite 1600
                                                  Portland, Oregon 97204
                                                  Telephone: (503) 802-5724

                                                  *Counsel for Defendant*

## <u>CERTIFICATE OF WORD COUNT</u>

This brief complies with the applicable word-count limitation under LR 7-2(b), 26-3(b), 54-1(c), or 54-3(e) because it does not exceed 35 pages, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

MANATT, PHELPS & PHILLIPS, LLP

By: <u>*/s/ A. Paul Heeringa*</u>
    A. Paul Heeringa, *admitted pro hac vice*
    Email: pheeringa@manatt.com