Jeffrey G. Bradford, OSB No. 133080
E-mail:jeff.bradford@tonkon.com
TONKON TORP LLP
888 SW 5th Ave., Suite 1600
Portland, Oregon 97204
Telephone: (503) 802-5724

A. Paul Heeringa, *admitted pro hac vice*
Email: pheeringa@manatt.com
MANATT, PHELPS & PHILLIPS, LLP
151 N. Franklin Street, Suite 2600
Chicago, IL 60606
Telephone: (312) 529-6308

*Attorneys for Defendant*

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF OREGON**
**PORTLAND DIVISION**

| | |
|---|---|
| LEON WEINGRAD, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>*v.*<br><br>CHW GROUP, INC.<br>d/b/a Choice Home Warranty,<br><br>Defendant. | Case No. 3:25-cv-00370-HZ |

**<u>DECLARATION OF BRIAN S. TRETTER</u>**

Pursuant to 28 U.S.C. §1746, I, Brian S. Tretter, declare as follows:

1. I am over 18 years of age. I am the General Counsel for CHW Group, Inc., d/b/a Choice Home Warranty ("CHW"). I have held this position since 2018. I am admitted to practice law in the State of New Jersey, the State of New York, and before various federal courts. I am in good standing in all jurisdictions where admitted.

2. I submit this Declaration in support of CHW's Motion to Compel Arbitration ("Motion"), filed concurrently herewith, in the above-captioned matter ("Action"). I have personal knowledge of the facts stated in this Declaration, and if called upon to testify to those facts I could and would competently do so.

3. In my role at CHW, I am familiar with CHW's operations and its business policies and practices, including but not limited to as they relate to the use of service contracts to define the terms of CHW's relationship with its customers and its legal obligations.

4. In my professional capacity, I am also familiar with CHW's records and recordkeeping policies and practices generally, including electronic databases used to record and store customer information. I am also familiar with, and have access to, CHW's Customer Relationship Management ("CRM") software which stores consumer information, including information pertaining to which individuals CHW has contracts with, their payment and renewal history, as well as the terms of those contracts. I regularly use the CRM system.

5. Except for those generated by third parties, all of the records referred to or described herein or that I referred to when preparing this Declaration are regularly kept and/or maintained in the course of business at CHW, were made near or at the time of the act or event recorded or were made reasonably soon thereafter, and were made or maintained by an employee, agent, or other representative of CHW. As to third-party generated records referenced herein (if any), based on my knowledge and understanding of the business practices of such third parties, all such records were made by, or from information transmitted by, a person with knowledge of the events described therein, at or near the time of the event described, were kept in the ordinary course of the regularly conducted business activity of such entities, and it is the duty and regular practice of those businesses to make and rely on such records and to transmit them to CHW. As part of their regular business practices, these records have been incorporated into the business records of CHW

and are routinely used and relied on by CHW in conducting business.

6. I have reviewed the Complaint ("Complaint") filed by Plaintiff Leon Weingrad ("Plaintiff") in the Action, and am familiar with the allegations therein, as well as the content of the Motion.

7. CHW offers consumers comprehensive financial protection against the high cost of unexpected repairs or replacement of major home appliances and other home systems (e.g., air conditioning, plumbing, or electrical). Consumers may purchase this protection by entering into "service contracts" with CHW (which are not "warranties" per se). These service contracts contain various terms and conditions defining the relationship between CHW and the consumer and the parties' legal obligations under the terms and conditions stated. CHW will not provide any services pursuant to a service contract unless the customer agrees to CHW's terms and conditions.

8. CHW is incorporated in the State of New Jersey, maintains its principal place of business in the State of New Jersey, and sells its service contracts nationwide, except where prohibited by law.

9. Based on my review of CHW's business records, Plaintiff entered into a service contract with CHW on February 4, 2025. To complete the purchase of his contract, Plaintiff provided his contact information (including an email address to which the service contract would be emailed[1]), selected the type of coverage he wanted, provided his payment information, and agreed to the terms and conditions of CHW's service contracts—which could be accomplished either by checking a box on CHW's website (if he began the purchase online) or verbally on the phone to a CHW customer service representative (if the purchase is finalized over the phone). This was the procedure for purchasing service contracts from CHW as of 2025, and Plaintiff could not

[1] For privacy reasons, this information is not included here, but has been provided to Plaintiff.

have purchased a service contract from CHW without doing so. In this instance, Plaintiff agreed to purchase the service contract during a call.

10. A true and correct copy of Plaintiff's CHW service contract is attached hereto as **Exhibit A**.

11. CHW's business records reflect that Plaintiff was emailed a copy of terms reflected in Exhibit A on February 4, 2025, at the email address he provided at the time of purchase, which was the same day he entered into his service contract. Additionally, it is CHW's usual and customary business practice to inform customers at the time of purchase (when the purchase is done over the phone) of the general terms of their contract, as well as to notify them that the full terms of the service contract purchased will be emailed to them at the email address provided and that their contract is available online, via CHW's customer web portal, for review at any time. The contract would be emailed during or immediately after the call. This practice was in place as of February 4, 2025, when Plaintiff purchased his service contract. Plaintiff would have been so informed when he purchased a CHW service contract. At all relevant times, his contract has been available on the customer portal.

12. When entering into his service contract, Plaintiff expressly agreed, *inter alia*, that: (1) "[a]ny claim, dispute or controversy, regarding any contract, tort, statute, or otherwise, arising out of or relating to this Agreement or the relationships among the parties hereto shall be resolved by one arbitrator through binding arbitration administered by the American Arbitration Association ('AAA'), under the AAA Commercial or Consumer, as applicable, Rules in effect at the time of the filing"; (2) "[t]he arbitrator, and not any federal, state, or local court, shall have the exclusive authority to resolve any dispute relating to the interpretation, applicability, unconscionability, arbitrability, enforceability, or formation of this Agreement"; and (3) "[a]ny claim, dispute or controversy … must be brought in the parties' individual capacity, and not as a plaintiff or class member in any purported class, collective,

representative, multiple plaintiff, or similar proceeding."[2]

13. CHW does not send unsolicited marketing calls or other forms of communication. This includes to Plaintiff, as alleged in the Complaint or otherwise.

14. Nothing in this Declaration should be understood as an admission of liability by CHW, which is expressly denied, or an admission of any fact alleged by Plaintiff in the Action.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on April 8, 2025, at Edison, New Jersey

By: /s/ Brian S. Tretter

Brian S. Tretter

[2] This is reflected in Exhibit A at pages 13 through 14.